**Howard Otis LOWERY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–612.**

Court of Criminal Appeals of Oklahoma.

May 3, 1977.

John T. Elliott, John M. Stuart, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Howard Otis Lowery, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Oklahoma County, Case Number CRF–75–3325, for the offense of Carrying a Firearm, After Former Conviction of a Felony. Punishment was assessed at a term of ten (10) years under the direction and control of the Department of Corrections in the State of Oklahoma. From a judgment and sentence in accord-

ance with the verdict the defendant has perfected his timely appeal.

Immediately prior to trial an in chambers hearing to determine the legality of the original arrest of the defendant was held. During the in camera hearing Detective Michael O'Shay testified that on the afternoon of August 29, 1975, he and other detectives received information that the defendant was wanted on an outstanding felony warrant from Canadian County of unauthorized use of a motor vehicle. The outstanding warrant was verified by phone by one of the other detectives. The witness, who knew the defendant from prior experiences, and other detectives later that evening observed a vehicle parked in front of the Zodiac Club in Oklahoma City. The vehicle turned out to be the missing Canadian County car and the detectives entered the club looking for the defendant. The defendant was found inside and was advised that he was under arrest on the outstanding warrant. A weapons search and struggle then occurred.

During the in camera hearing the defendant testified that he had never heard of the outstanding Canadian County warrant until the preliminary hearing on the instant charge and that on the evening in question the police, dressed as hippies, flashed a badge and told him that he was under arrest as a material witness. The defendant asked to see a warrant and an officer told him that no warrant was needed. A struggle then ensued. After hearing the evidence the trial court overruled the motion to suppress and the trial commenced.

The testimony of Detective O'Shay concerning the arrest was essentially the same as related above. He further testified that after the arrest the officers attempted to search the defendant for weapons and a struggle ensued when the defendant tried to resist the search. During the struggle a .38 caliber Smith and Wesson revolver fell from the leg of his right pants to the floor. The revolver was loaded and the live shells were hollow point bullets which had been altered by someone in order to make the bullet mushroom when fired. The revolver and the ammunition were admitted into evidence.

The State then called Detective Joel Manning whose testimony was substantially the same as O'Shay's. He further testified that when he attempted to frisk the defendant he felt a bulge in the defendant's waistband; that the defendant attempted to pull away from the search and that a gun fell to the floor out of the defendant's pants leg. The witness identified the gun as the .38 revolver previously admitted into evidence.

The State subsequently called Ms. Carolyn Price, custodian of felony records in the office of the Oklahoma County Court Clerk, who testified that the defendant had three prior felony convictions, two for robbery with firearms and one for robbery with a dangerous weapon, and that he had received a ninety-nine year sentence on each conviction. The State then rested.

The defendant testifying in his own behalf then stated that he was at the club on the night in question but that he had never seen the gun recovered that evening. He further related that he was sitting at the bar talking to some friends when someone grabbed both his arms and flashed something in front of him. He inquired of the two men who approached him if they had identification to verify their official character and one produced a badge. They informed him that he was under arrest but did not produce a warrant. The defendant then turned around to talk to the barmaid and the officers pulled him off the stool and caused his body to be slammed against the bar. They kicked his feet out from under him at which time he felt his foot hit something and heard one of the officers yell, "He's got a gun." He further testified that he never saw the gun until he reached the police station and that he initially thought one of the officers had dropped it. On cross-examination the witness admitted that he had been convicted of murder in 1961 for which he received a life sentence. He further admitted the robbery convictions and sentences.

■ The defendant's first assignment of error contends that reversible error was

committed when the trial court admitted prejudicial and inflammatory evidence which in part constituted evidentiary harpoons. In support of his contention the defendant cites four instances during the trial when the prosecutor or a state witness made reference to the outstanding felony warrant from Canadian County on a charge of unauthorized use of a motor vehicle. The defendant argues that each reference constitutes an evidentiary harpoon intended to show that the defendant was guilty of another charge for which he was not on trial. However, the record further reflects that the trial court admonished the jury that the evidence was admitted for the sole purpose of explaining the actions of the officers when they initially arrested the defendant. The references to the Canadian County charges were properly admitted as a part of the res gestae. *McGlocklin v. State*, Okl.Cr., 516 P.2d 1357 (1973). It should also be noted that the references in this particular case did not prejudice the defendant since he admitted four previous major felony convictions. The defendant's first assignment is without merit.

■ The defendant's second assignment of error urges that the trial court committed reversible error in allowing the prosecuting attorney to elicit evidence of the details of the defendant's prior felony convictions. However, the record, reveals that the only information elicited by the prosecutor was the crime charged, the date of the conviction and the respective sentences. No reference at all was made to the defendant possibly being on parole and the defendant testified that he was in the penitentiary when he was tried on a subsequent charge.

From the above it is apparent that no details of the previous convictions were elicited, no reference was made concerning parole and the defendant was not asked how much time he actually served on the prior convictions. See *Lee v. State*, Okl.Cr.App., 560 P.2d 226 (1976). The defendant's second assignment is meritless.

The defendant's third assignment of error urges that the trial court erred in refusing to declare a mistrial when defense counsel informed the trial court that during a trial recess some members of the jury panel viewed the defendant handcuffed in the hall.

As stated in *French v. State*, Okl.Cr., 377 P.2d 501 (1963), it is reversible error for an accused to be brought into court and before jurors while shackled. In *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, the United States Supreme Court held that when an accused is compelled to wear identifiable prison clothing at his trial by jury he is denied due process of law.

■ In the instant case it is apparent that there is a reasonable possibility that the defendant, while handcuffed, was viewed by some members of the jury panel on one occasion in the hall during a recess. The defendant was not brought into court in that condition. There is no evidence that the encounter was other than fortuitous and no prejudice is shown. Although it is unfortunate that some jurors might have seen the defendant while handcuffed, it is our opinion that the error, if any, was harmless under the facts and circumstances of this case. The evidence of guilt is strong, the defendant admitted four major felony convictions and it is unreasonable to believe that the jury would have returned a different verdict if the incident complained of had not occurred. See *Boswell v. Alabama*, 537 F.2d 100 (5th Cir. 1976).

■ By assignment of error the defendant further contends that the firearm in question was seized as a result of an illegal search and seizure since the arresting officers had no probable cause to arrest the defendant and therefore exceeded their authority. Again we must disagree. In *Jones v. State*, Okl.Cr., 507 P.2d 1267 (1973), this Court held that an arrest may be based upon information received from a police radio dispatcher. In the instant case the officers were advised of the outstanding warrant and confirmed same by phone. They then found that missing auto parked in front of the Zodiac Club and entered to find the defendant, whom officer O'Shay

knew. The arrest was certainly based upon probable cause and was valid. The arrest being legal, the subsequent weapon search was proper.

■ It is therefore our opinion that the evidence presented at trial was certainly sufficient to justify the verdict. The defendant received a fair and impartial trial before a jury, and he was not prejudiced in any of his substantial rights and the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED.

BUSSEY, P. J., and BRETT, J., concur.